Thank you, Your Honor. And may it please the court, may I reserve two minutes of rebuttal time? You'll have to keep track of your time, but yes, you may. Okay. Thank you, Your Honors. May it please the court. My name is Joshua Barr David. I am the attorney for petitioner, Mr. Akhtar. Mr. Akhtar demonstrated a well-founded fear of future persecution and that it is more likely than not that he would be persecuted in the future as well as past persecution. The immigration judge erred as well as the board in affirming the immigration judge, uh, in concluding that Mr. Akhtar's claim for asylum was not credible and that he failed to demonstrate or meet his burden of proof with respect to withholding approval. Um, with respect to the negative credibility determination, uh, the principal reason provided by the agency was a discrepancy of approximately one month in the time that Mr. Akhtar was in hiding, whether it occurred in June of 2013 or July of 2013. This inconsistency is so minor and sheds zero light whatsoever on Mr. Akhtar's, um, claim of past persecution or fear of future persecution. Uh, that is to say that there would be no basis for him to, um, there would be no benefit to providing incorrect, inaccurate information. I have a question about a different, uh, issue that the BIA also, uh, relied heavily on the audio disc, uh, in which your client said he distributed with his name on it, which was a cause of people coming after him and the audio disc that he provided did not have his name on it. And my read of the record does not show that he was given an opportunity to explain that discrepancy. Um, am I missing something? Was he given the chance to explain that, uh, issue which, on which the BIA relied? Uh, no, your honor, it's our position that in fact, he was not provided an appropriate opportunity to explain that issue. And we would note that, um, on its face that there is sufficient reason, certainly for the agency to do an inquiry, given that they were going to rely on it, um, given the fact that it in fact is only listed as the cover of the CD and it's unclear where on the CD he's saying his name was. And in addition, it was not translated. And we certainly, I thought the, uh, the major question was whether he had said that he proved that the, um, CD that the Muslims had become aware of the CD three to four months before July and, and his, in his testimony said, no, it was the very day he was attacked July 5th. The, um, the name on the CD seemed like more of an, of an afterthought. The, uh, well, both are, obviously they are, they are related issues. Um, it, from a reading of the judge's decision, it appears that she was placing greater weight on the alleged discrepancy between the relevant dates of the event, but certainly did both the immigration judge and the board of immigration appeals. So the agency as a whole did place some weight, um, on this CD, uh, in determination that it didn't contain his name. So it was, uh, your honor to, uh, I know that's a long way of getting to answer the question. It was, it was, uh, both issues were a basis. Um, and it appeared to me that the BIA placed more weight on it than the IJ did just from the amount of discussion that they gave it at AR 13. I would agree with your honors assessment, but, um, go to the point that I don't think it's necessarily for this quarter that this court needs to conclude what was the most important factor cited by the agency, the board or the immigration judge, um, it is for the agency themselves to provide an explanation for review and where there's uncertainty as to whether the agency was providing or placing great weight on these discrepancies or a small amount of weight, um, at the very least, if there's any questions should be remanded to the agency for further clarification, um, without, if there's one discrepancy though, that's supported by substantial evidence, that's enough of what will be a discredibility determination as a matter of case law. Respectfully, we would assert that that is not the case. If the agencies, if it is unclear how the agency would rule, had the errors, any errors found by this court be scrubbed up the record, meaning would the agency rely exclusively on one discrepancy when they previously provided three reasons and didn't indicate that one was dispositive. If it had satisfied his burden of including an English translation, that's what the CIA said, that he would satisfy. We do not allege that he provided a translation, but to that extent, your honor, it is not a discrepancy, but rather an omission that this evidence without a translation cannot be necessarily admitted or considered, um, in its entirety and to the extent that the agency finds the lack of translation to be relevant, um, it would not constitute a discrepancy, meaning that it doesn't conclusively establish his name doesn't appear on the cover or the date that the, um, people in his region discovered of this CD. Um, it simply is something left unknown. Um, it just, I don't remember this. Did the IJ, um, make the same point about his name not being on the cover? Yes. The, the immigration judge did reach that conclusion. Um, I, and was there any, any effort to reopen, to provide additional information about that issue? That, that was not presented, um, to the agency after, uh, at any point, a proper translation was not presented. No, your honor. Um, with, with respect to the negative credibility determination, one point I do want to highlight to the court is that it is very clear from reading the immigration judge's decision that she did not apply a negative credibility determination to the withholding of removal claim. She presumed that the withholding of removal claim, which has the same underlying facts and evidence was credible and addressed and denied the removal claim, um, on the basis of the ability to resettle, internally relocate, um, and a failure to demonstrate that the government of Pakistan would be unwilling, unable to protect Mr. Akhtar. Is there any case law about what we do in that situation? Um, it, it seems unlikely that, um, uh, we could say, well, it was false. This, this testimony was false with respect to asylum claim, but the exact same testimony is true with respect to withholding claim. To be honest, your honor, I could not find anything that's specifically addressed to this circumstance. And I did look because I have never seen a situation where the judge found a claim not credible for one purpose, but presumed credibility for a second purpose when it was based on the exact same underlying facts and, um, evidence presented. So it's, it's, um, a cognitive dissonance to try to say that it's not credible for one aspect, but to be believed for another aspect. And again, that's another basis to remand to the agency for proper analysis in the first instance. So this court isn't left to guess as to what the agency intended by such a finding. Um, I see I'm at two minutes. I would like to reserve time for rebuttal unless the court has any additional questions at this time. You may reserve. Thank you. Thank you, your honors. We'll hear from the government. Your honors. My name is Linda Doe and I represent the respondents. Okay. You're going to have to speak way louder. Your honors. Sorry. Uh, thank you, your honors. My name is Linda Doe and I represent the respondents, the United States attorney general. Uh, in this immigration case, petitioner, uh, actor has not sustained his burden to show that his fear of religious persecution in Pakistan is either subjectively genuine or objectively reasonable as a petitioner sent forth a fairly relatively straightforward claims based on two incidents of harm he professed occurred in Pakistan and yet nonetheless, uh, the immigration judge found his claim not credible based on six specific cogent reasons. The first petitioner set forth a claim that he had been singled out for persecution, um, based on the dissemination of a CDs, but he excuse me, they, both the, uh, IJ at, uh, AR 31 and the BIA appeared to put some emphasis on, uh, the statement that the, uh, CD did, even though he said it contained his name, didn't. And as I asked opposing counsel, uh, it appeared to me that, uh, he was not given an opportunity to explain that, uh, discrepancy. Um, do you have a different reading of the transcript? Is there someplace where he was given the chance to explain that? Um, not necessarily the fact that you, uh, provide an explanation, explanation, but petitioner. I'm sorry. I can't hear you. Petitioner proffered the evidence in support of his claim. And it did not attest to his claim that his name was on the CD. Therefore, it wasn't an accuracy in his statement, your honor, uh, where he claimed that he had been targeted on account thereof, excuse me. We have, uh, a number of cases that say when, uh, there is a discrepancy that the IJ intends to rely on, the person must be given an opportunity to explain, and that's what I'm getting at it. Was he asked about that? Why is it that you say that your name is on here, but I don't see it. I mean, there are many possible explanations. This is just an exemplar, or my name is here and I'll get a translation or something, but I didn't see an opportunity to explain. Is there one? Well, it was incumbent upon the petitioner to provide a translation of any foreign, foreign language documents that he had submitted. And he had not done that. It's not responsive counsel. It's I take it. Your answer is no. He was not asked about it or given a chance to explain. Uh, yes, your honor. He was not providing an answer to his name, but nonetheless, there's a number of other inconsistencies that support the agency's decision. That is not the only, or the sole, uh, sole reason for finding petitioner not credible. Uh, as the immigration judge noted, petitioner provided three varying accounts as to why he believed he would be singled out for persecution. And, um, petitioner claimed that he had seen witnesses holding these CDs. Uh, the other one was that three to four months prior to the incident, he claimed that Muslim extremists had taken the CDs, which he claimed had his name on it, and the third being that he had also stated that on the day of the incident, Christians had inadvertently provided the Muslim extremists with these CDs and that's three varying accounts. Why are those inconsistent? Can't they all be true? Um, well, your honors, if he was seen holding the, the CDs, he would not set him apart from anyone who had disseminated it. If Christian, uh, other Christians had inadvertently given it to them, why wouldn't he, the Muslim extremists target them? This is the whole basis of petitioner's claim is that he's set apart from his family who created, he's claimed that his entire family had created a thousand audio Bible CDs and disseminated it through his local community. So he would not have been the only one targeted. And that this is the crux of his claim. He claims that he was singled out because his name was on the CD. And then the evidence that he had submitted didn't attest to that. Uh, regardless of it, you know, the inconsistencies or discrepancy or the notice, this is information he set forth as evidence and it did not corroborate. And as I think I shouldn't get noted, it wasn't some, uh, it wasn't corroborated by his wife who he claims had also had partaken, partaken in incidents with, uh, creating the CDs and disseminating CDs. She made no mention of it. She made no mention of the false allegation while she gets a petitioner, any of his professed beating, uh, you know, again, uh, there is a distinction. There is a distinction between inconsistency and lack of corroboration. So we take, for example, the name on the cover, you may say he didn't give a cover, but that isn't necessarily inconsistent with his testimony that his name was there. There just isn't something to corroborate that. His wife you're saying didn't corroborate, but that doesn't mean that what he said wasn't true. So what is it that really does support the determination that he could not be believed, the adverse credibility finding? Well, again, your honors, other reasons as well. Petitioner claims that on the day of the incident, he hid at the church for two to three days, then went to, um, his friends, the home of a friend named Khalil, where he stayed for two weeks and obtained a visa to Brazil. And then subsequently went to his sister's home. It's contradicted by the letter he submitted from Khalil, which specified that he had stayed at his home from June 2nd through June 16th. This is a whole month prior to the events he professed occurred. So the inconsistency isn't the question of whether he stayed at the friend's home for a couple of weeks, but whether that was June or July. I am not necessarily, your honor, a petitioner said that he had applied for a visa while at his friend's home. That being the case, he would have had a visa and a reason to leave and depart Pakistan aside from the professed alleged beating that he claimed and it was uncorroborated. Excuse me, Khalil also said that, um, that, uh, Mr. Akhtar faced dangerous conditions and there were, was corroboration that he was attacked in July. It just seems like we, we have cases that say that a minor mistaken date is not significant enough to support an adverse credibility finding. And it just seems to me that there's no logic to why he would have stayed with his friend who said he was in danger before he was in danger. So I really don't see the significance of this, uh, date. Well, again, notwithstanding that inconsistency or discrepancy, as your honor pointed out, petitioner had obtained a visa to Brazil, a country he acknowledged was safe and yet did not apply for asylum, which again, calls into question the veracity of his claim that he actually had a genuine fear of persecution in Pakistan. As he knows that he stayed in, uh, as you likely know, there's substantial litigation over the efforts of the administration to limit the ability to pass through a third country. And I don't take it you're, you're making that argument to us that, that those should be applied. We've got lots of examples in our case law of people who pass through a third country and that doesn't, doesn't stand to prevent them from applying for asylum here, especially given somebody who passed through and came here at a time that was the prevailing law. Uh, is there anything to support the proposition, the fact that he elected not to stay in Brazil should be taken away against, uh, the claim he's making for asylum here? I'm not aware of anything that suggests why in, in 2014, he should have assumed that was the state of the law. I, uh, regarding this sale, I just look to the question. It's not, it's not as a preclusion from, um, applying for asylum in the United States, but it is a fact to consider. Petitioner indicated he resided there for roughly a year. What makes it a fact to consider if our law didn't require that and didn't seem to impose that? Our court's case law certainly never imposed any such presumption. What supports, and I don't, I don't know that there's a basis to support it in, in logic, what supports us from what, what encourages us to adopt that formula now? Uh, I mean, um, it's just some, one of many factors that the agency had considered, uh, in rendering its determination, excuse me, the government did not argue firm resettlement elsewhere, which is a statutory ground. Uh, but if it is not argued, isn't, isn't it waived to consider whether he was able to resettle somewhere else? Well, Your Honor, the immigration judge didn't, I wasn't, there was not in a firm resettlement determination. It's just that if Petitioner had a genuine fear of returning to his country, I think that he would logically consider applying to, uh, or for asylum or status in a country, which he acknowledged was, uh, predominantly comprised of a Christian, uh, population. Uh, again, Your Honors, the immigration judge further considered the sixth reason in support of his, uh, adverse credibility formations that Petitioner testified that he had not served in the Pakistan military, and yet that's contradicted by the representations he had made in his record of foreign statement, not in which he claimed not only had he served in the Pakistan military, he had also seen weapons training. Again, and that goes into, you know, who he is and his experience, and it is, you know, uh, specific cogent reasons, you know, cast Petitioner's veracity into doubt and in calling to question, um, you know, maybe who he is and, you know, the actual facts and circumstances of his claim. Uh, knowing that, you know, the immigration judge had afforded the Petitioner the presumption of credibility in considering the withholding and removal, um, application. And there Petitioner found that the two, uh, two instances of harm presuming him credible did not rise to the level of persecution where Petitioner did not provide the sufficiently detailed testimony regarding any of the injuries he had purportedly sustained. And as the immigration judge noted, he had not shown that any fear of future persecution was objectively reasonable where in his entire family continues to reside and practice the religion in Pakistan, and he indicated they had not been harmed or, uh, subject to false prosecution. Uh, Petitioner further... Excuse me, you have exceeded your time by quite a bit, so we understand your position and nothing in your briefing is waived by failure to argue morally, um, and I believe, uh, Petitioner's counsel has some rebuttal time remaining. You're muted. Thank you. Thank you, Your Honor. And my apologies. Um, I would like to briefly just address some of the things raised by opposing counsel, um, for the government. The first with respect to Mr. Akhtar's wife's letter, um, the immigration judge, in fact, did not fault the letter for failing to mention the two beatings, um, and this is important that in fact, uh, she was not present during the two most important relevant events, um, noted by, uh, Mr. Akhtar, um, and the immigration judge herself specifically stated that, quote, uh, this is on page 34 of the record in her decision, the respondent did not testify that his wife was present during either incident, referring to the, the two, um, incidents where he was physically attacked, um, and his wife's two things, two things I don't like you to address it. Your time is short. One is the question about, uh, military service. And the other is the, uh, safety, uh, of his family. Uh, would you address those two arguments, please? Yes, Your Honor. With respect to the military service, the, as noted by the government, the interview given, or the record of the interview given upon arrival in the United States, what is important is that Mr. Akhtar specifically and explicitly says that he in fact did not say what is contained in that summary of the interview. Um, he testifies to that on page one. Why is the immigration judge required to accept his denial? The immigration judge is not required to accept his denial, but the immigration judge must, um, then evaluate the evidence proffered by the government to see whether or not it contains sufficient indicia of reliability. And notably the, what is laid out in that summary, um, in the record of that interview, uh, does not purport to be a verbatim transcript and does not indicate in fact, how that summary was brought about, whether it was typed contemporaneously, whether it was from the officer's, uh, recollection, handwritten notes. Um, there is sufficient reason why the immigration judge should have analyzed the, that specific piece of evidence, given that Mr. Akhtar explicitly denies making those statements. Um, there was no best evidence provided the, the officer who prepared the application was not presented by the, or prepared the summary was not presented as a witness. There was no opportunity to cross examine. And at the end of the day, there was no analysis by the immigration judge or the board as to its reliability. With respect to Mr. Akhtar's family safety, that is one factor that can be considered. And Mr. Akhtar does not say that any of his family have been physically attacked, um, in Pakistan, but that is just one factor to be considered in the analysis. Mr. Akhtar's specific circumstances as having distributed CDs, which is something that no members of his family did, um, being viewed as, as proselytizing, um, is something that differentiates him from his family. Um, and again, had this been the only issue addressed by the immigration judge, we cannot be certain whether that would be sufficient to deny the application, um, your honor, I hope I've answered your question unless the court has any further questions. Right. I was just going to say, you, you have also exceeded your time by about the same amount. So, uh, we understand both parties' positions. The case just started, you just submitted, and we're very appreciative of the helpful arguments from both of you. Thank you, your honors. I appreciate the opportunity to appear.
judges: Graber, Clifton, Ikuta